Good morning, your honors. May it please the court, Ms. Richards, and the government. The primary point of this appeal turns, I think, in ways on accessibility of the law. The defendant went to trial in a life-in-prison case with an indictment printed in black and white of a specific substance that he was alleged to have distributed or somehow caused the death of somebody. The trial evidence then convicted him where the government's own expert could not pin down whether it was in fact that substance or not. There were two positional, sorry, the fentanyl analog alleged for fluoro isobutyl fentanyl only is that specific analog if the positional isomer in the chemical is in that specific position. If it's somewhere else, it's a different substance. It's either 2-fluoro isobutyl fentanyl or it's 3-fluoro isobutyl fentanyl. And most importantly, two of those were not controlled substances at the time of the alleged incident. They didn't become scheduled until later. So fundamentally what happens here is Mr. Watkins stands convicted after the fact where Dr. Hale, the government's medical expert, whose sole reason to testify at that trial is to establish the but-for cause of death under Burrage, she can't say that it's that specific isomer. She sort of hedges her bets. She allows for it though. It could be. It could be. But what she says though is, and this turns on essentially that the mechanism used to test seized narcotics that are still in narcotics form is different than how we test biological samples in a body or after. Essentially, we're looking at the after effect. So she can't say after the fact, we know this fentanyl analog is broken down, there's evidence of it, but we don't know where it came, we don't know what it came from because we don't know the original form. And that's the problem here. The indictment was specific, correct? Correct. And correct me if I'm wrong, was it four or five that was in the indictment? Four. Four in the indictment. But if the indictment just said fentanyl, would you have a case? I don't think, I think we have a strong case. You don't have to put in the four or five, do you, in the indictment to successfully charge it? Well, chemically, I understand those are all different analogs of fentanyl. So 4-fluoroisobutyl butyrol fentanyl is a different substance than fentanyl. It's an analog. Well, it is fentanyl. I mean, it's still, fentanyl was in the name. Correct. But as I understand it chemically, and this is, I think, I don't know how well the testimony was developed in the district court, the analog, it may act like fentanyl and have chemical similarities to fentanyl. So how are you prejudiced? I mean, this was a question of just, the indictment got it wrong in terms of, maybe got it wrong in terms of what was found in the body. But how are you prejudiced? Because ultimately... Is it just a variance in the indictment that lack of prejudice can overcome for the government? No, because I believe that ultimately, under the statute, it has to be a controlled offense. That's the element of the crime. And if it's not 4-fluoroisobutyl fentanyl, it stands that he can be convicted on something that's not illegal at the time. So the prejudice goes to that specific element of the offense. Well, isn't that just a question of sufficiency of the evidence? I mean, whether there was 4-fluoro in her body or not, and not... I don't understand why you're arguing it's a constructive amendment when it's just whether the government can prove out whether there was 4-fluoro. Well, I think it's an issue of both. Ultimately, and I think that's what was argued in the district court, is just, is there sufficient evidence that it's there? And we'd say there's not. Because in most cases with these sort of medical experts, they're able to say, this is the substance that's the forecause of death, and we see it here. Right, so then there was the circumstantial evidence where there was 4-fluoro, and it seemed like she stole some and took it. So as I understand the government's circumstantial evidence, essentially every other dealing with this defendant, we have the tested drugs and we know they were 4-fluoro, so it must be the other thing. I think fundamentally that flips the burden on the defendant to say, how is this last thing not like the others? Whereas traditionally, it would be the government expert to say, this is the substance, it's a controlled substance, and it was the but-for cause of death. And here she's not able to do that because she has to back up and hedge the bet. Now, the flip side of this argument, too, is that if this was such an important issue and so relevant, this goes to the effective assistance of counsel issue. You have a medical toxicologist who comes in and she says, this is my specialty. This is, you know, I examine both living people and people who have passed away from substance abuse. I can make a, I can form an opinion on what may have killed this person. The defense is only able to put on the medical examiner who only, in the words of the medical toxicologist, can only say, I only work on dead people. And so it goes to the issue of should not, a better expert had been sought to counteract that issue, to fully drive home the point that if this is the substance that killed this person, what was the substance, what was the effect of it, why are they different? Because the medical examiner... Is this really the type, excuse me, the type of ineffective assistance claim that is appropriate for direct appeal? I believe it has to be preserved, but as I think the parties do agree in certain ways, one way to deal with it is to send it back for a more developed record. But as you can see in the district court, there was a lot of... What would you develop on the record as to ineffective assistance? I'm sorry? What more would you need to develop? Probably counsel's reasoning on why not seek a specific expert beyond just the medical examiner. But ultimately... There was a chemical test diagnosed there apart from the medical examiner on drugs, the drugs that were involved that were found there? Correct. The chief toxicologist, Christine Giffen, tests, it was a blood test. But then again, that's very vague. It just says it has, that the blood has the presence of meta or para fluoroisobutyl fentanyl. Again, it can't tell the difference. And she testifies, I can't tell what the difference is with our equipment. And that's essentially then where Dr. Hale comes in and says, we know the cause of death was the fentanyl analog, but putting those two together, they still don't have sufficient proof which analog it was. This trial counsel got that out of the governance expert. I agree. And you're calling that ineffective because... I think when you... So in a totality of the circumstances argument, Dr. Hale, the governance expert, was extremely powerful at saying, look, you may have the medical examiner who could say things, but she doesn't do what I do. She only works on dead people. And I think that, at least when I read it from an appellate perspective, that came across extremely strongly. And it leaves that gap of why didn't trial counsel seek to meet the medical toxicologist on a more firm footing with some sort of expert who might say what the full effect of the different fentanyl analogs were. As Dr. Maloney said, we don't fully know the effects, whether they're stronger, weaker than fentanyl. And I see my time is up. So I'd just like to reserve. You're reserved some time for rebuttal. Yes, thank you. We'll hear from the government.  Good morning. Monica Richards on behalf of the United States. Here with regard to this case, we have an indictment that charged heroin plus the four-fluoroisobutyl fentanyl. And that was the item, the controlled substance that was possessed and sold. The same was in the evidence the government presented at trial. And the same was medical information provided by the experts, including the ME who examined the decedent and the government's expert who opined as to the cause of death being opioid in nature, as opposed to there was also cocaine found in the system. And the expert, our medical expert, never said it was three-fluoroisobutyl fentanyl or four-fluoroisobutyl fentanyl, just said that the death was opioid, consistent with an opioid toxidrome, meaning that this was somebody who did not die, who died because of these inability to breathe, the lungs filled with fluid, and that was the testimony regarding the lungs being heavier than normal, the cause at the moment of death having been asleep, as opposed to cocaine toxicity, which is somebody who is hectic and running around and has elevated heart beat, elevated blood pressure. So that was really the purpose of the expert's testimony. It wasn't to distinguish between three and four-fluoroisobutyl fentanyl. The expert... Would it be a problem ultimately if it were, if there were either expert or testimony of some kind that said, oh, actually this is all three-fluoro. I'll just call it fluoro. That's fine. I wish I had done that. Would that be a problem? Then if this, the argument that I think your adversary is making as to whether or not it matters, whether it's three-fluoro or four, is more needed, I guess, other than just what you've said as far as it showed that it was opioids, that it was fentanyl, analog, what have you. No, and I think that goes to Judge Walker's initial question of my colleague, was that here, was that we did charge it that way in the indictment, and that was the government's proof. Did it matter that it was charged so in the indictment? Maybe, maybe not. But what does matter is maybe we didn't even have that result. Maybe those tests weren't even available to test, to decide whether it was three or four-fluoro. In the world, say, a couple years ago, before this was even a thing, before this was a known substance, what if we didn't even have that testimony trial? Well, it doesn't matter. Our proof at trial was still sufficient. The evidence at trial was still sufficient in terms of the controlled substance. The actual elements for charging that didn't mandate a specific, and certainly not to the level of three-fluoro versus four-fluoro. And so here, where we had a test that was consistent, as Judge Walker noted, the test wasn't inconsistent with four-fluoro. It was fully consistent. The toxicology test was fully consistent with four-fluoro. That it could have also been three, well, that then goes to weight of the evidence, as Judge Park noted. So weight of the evidence and sufficiency of the evidence. Here, nobody was even talking about three-fluoro. The only testimony was that it wasn't a known substance. It wasn't, excuse me, not known substance. It wasn't a part of this investigation, nor had anybody seen it in another investigation, whether the government's investigators on this case, or the medical folks. They'd never seen three-fluoro. So that really goes to the weight of the evidence here. So had there been no post-mortem test result, which could distinguish three versus four, I mean, at all, between three or four, we still would have had sufficient evidence here. The fact is, we did have a toxicology report, and it was consistent with four-fluoro. Long answer. With regard to the rest of the issues, again, I would just say, again, that here we had a judge who was, this issue was raised before the district court, and the judge wrestled with the issues of constructive amendment, and determined that here, where you have a consistency, there's no chance here that the defendant was found guilty of something with which he was not charged. And that's what matters for purpose of the constructive amendment analysis. If there's no further questions, unless there was some discussion on... Your friend talked about ineffective assistance, and can you address why you think we should decide that instead of leaving it for collateral? Well, I think it's the same thing. We only have one toxicology report. We did have the ME who examined the decedent. We have the ME who testified here. There was very interesting testimony that came out, as Your Honor noted, that there was some points scored, and it did allow them to sort of raise some arguments in terms of whether or not the evidence was sufficient. Well, could it make a difference what trial counsel's reasoning was as to why there wasn't an expert put on the other side? I suppose it could. I guess it would matter what was said, I suppose. That's true. What would the expert have done? Would the expert have examined the body as well? Yeah, that's tricky. I don't know, because there was no dispute that what caused the death was this opioid toxidrome. Right. So between 3 and 4, I don't know. I don't know what could have been done differently. We had one toxicology report that everybody was looking at and deciding, and it was consistent with the government's evidence at trial, 3 versus 4. So I don't know. I don't see it myself, but if the court sees it and doesn't decide it here, rather lets it go to a 2255, then I guess we would all find out. If there's no further questions, I'll just end my brief. Thank you. Thank you, counsel. We'll hear rebuttal. Thank you. Your Honor, I just want to limit this really to sort of the what-if points the counsel raised. As we know from probable cause and other areas of equal consistency under the law, that's not sufficient where there are two equal and probable alternatives. And that's, I think, what counsel is conceding in ways even if it's not disputed that opioid toxidrome was the manner of death... It wasn't really opposing... It wasn't really opposing testimony. The toxicologist did not say it was definitely three or four. Four or three. It was just, I don't know. It was three or four, right?  So it left... It's consistent with what the government's proof was, isn't it? It's consistent with... It doesn't directly support it the way the government might have hoped, but it's not inconsistent with the government's proof. It's not inconsistent, but it leaves open that equal other probability. And I think this is reflected in the district court's reasoning where we believe it erred. It denies the Rule 29 motion and the district court says, well, the defendant was clearly on notice of the substance, the kind of slips, the variation of the substance that killed her. Meaning that I think even the district court struggled with this idea of what is before? Is it proof of that specific substance? If it's not... But the defendant did have notice of the core of criminality, right? I'm not sure that he did. If you take... The core of criminality. I mean, you know, the essence of the case, which was that there was an opioid in there. That was pretty clear. That was what the charge was, and that was... It wasn't disproved by anybody. But I go back to the sense that the charge calls for possession of intent to distribute of a controlled substance. So even if the manner of death is opioid taxidrome, what must ultimately cause that is a controlled substance, and that's where it gets blurry because none of the experts can fully say whether the thing that was in the substance was a controlled substance at that time. That's all I have. Thank you, counsel. Thank you both. We'll take the case under advisement. Thank you. Thank you.